UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES M. LANIER,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>SAN JOAQUIN VALLEY OFFICIALS ASSOCIATION, *et al*.<br><br>　　　　　　　Defendants. | **Case No. 1:14-cv-01938-EPG**<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 59, 60, 61) |

**I.　INTRODUCTION**

　　Plaintiff James Lanier filed a Complaint on December 4, 2014 alleging that Defendant San Joaquin Valley Officials Association (the "SJVOA") discriminated against him on the basis of race when it declined to enter into a contract for high school sports officiating services with him in August 2013.  Plaintiff also named all 9 members of the Association's Board of Directors—Fred Broad, Randy Wright, Frank Kirby, William Long, Bob Kayajanian, Brig Beatie, Ed Mateo, Greg Costa, and Dieter Henkleman—as defendants (collectively, with the SJVOA, "Defendants").  Defendants are now moving for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, asserting that, although this case has lasted for nearly two years and ample time has been provided for the discovery process, Plaintiff is unable to put forth any evidence of discriminatory animus in their decision.  After a review of

the evidence provided by the parties, the Court agrees that no triable issues of material fact exist in this case and GRANTS summary judgment in Defendants' favor.

**II.     BACKGROUND**

Plaintiff is an African-American who owns and operates a company called the "SportsTime Officials Association" ("SportsTime"). SportsTime provides officiating services for school sporting activities. Defendant SJVOA provides similar services for public school districts in the Fresno County area. Plaintiff had previously been an independently contracted official with SJVOA for several periods, the most recent of which was between 2003 and 2006. In 2013, Plaintiff presented a proposal to partner with SJVOA for school events.[1] On August 13, 2013, Defendant Bob Kayajanian emailed Plaintiff to inform him that SJVOA did not accept Plaintiff's proposal.

On December 4, 2014, Plaintiff filed a Complaint alleging that Defendants had discriminated against him on the basis of race. The operative version of the Complaint contains two claims: a claim under 42 U.S.C. § 1981 and a claim under Title VI of the Civil Right Act of 1964, 42 U.S.C. § 2000d. (ECF No. 8.)

The Court initially discussed the scope and course of discovery with the parties at the initial scheduling conference on December 3, 2015. Discovery was opened on December 15, 2015 and the parties were given a discovery cutoff date of June 15, 2016. (ECF No. 25.) The Court also advised the parties that any discovery motions would need to be filed no later than July 1, 2016. (ECF No. 25.) The Court further set a mid-discovery status conference for March 23, 2016. The parties were directed to file a joint status report in advance of that conference.

On March 22, 2016, the parties filed a joint status report in which Plaintiff stated that he "plans additional discovery that may include, deposition, written discovery, perhaps an expert witness." (ECF No. 30.) Neither party identified any problems with discovery. The Court directed the parties to submit a more substantive status report (ECF No. 31), which Defendants filed on March 28, 2016. (ECF No. 33.) Defendants noted that Plaintiff was dissatisfied with the documents they had provided, but that Plaintiff had not provided more specific details about what documents he was requesting, aside from a specific

---

[1] The precise scope of this partnership and the details of the proposal are not explained by either party.

2

request for the personal tax returns of each of the named board member defendants. Defendants had objected to that request and Plaintiff had threatened to file a motion to compel.

At the mid-discovery status conference, the Court provided guidance to the parties and Defendants agreed to produce tax documents in the form of 1099s provided by Defendant SJVOA to the individual board member defendants. The Court set a second status conference for June 20, 2016.[2] The parties elected to submit separate status reports for the second status conference. In his status report, Plaintiff noted that Defendants had produced the 1099 forms, but Plaintiff believed that the forms were fraudulent and explained that he intended to notify the IRS so that they could audit Defendants. He also stated that he believed the Defendants were lying in their other discovery responses, but did not specify which responses he objected to. He acknowledged that Defendants had served him with a set of requests for production of documents, requests for admissions, and special interrogatories in May 2016, but that he had not responded to them.[3] (ECF No. 40.)

At the second status conference, the Court noted that the non-expert discovery cutoff date had passed. The parties were surprised. At their request, the Court granted a short extension to the discovery deadline and granted Plaintiff leave to file a motion to compel regarding specific documents. Plaintiff was also directed to answer Defendants' discovery requests. (ECF No. 43.)

Plaintiff did not respond to the discovery requests as directed and Defendants moved to compel and requested sanctions on August 10, 2016. Plaintiff filed his own motion to compel on August 22, 2016. The Court granted in part and denied in part Plaintiff's motion and granted in whole Defendants' motion. Because Plaintiff was *pro se*, the Court declined to award terminating sanctions and awarded only evidentiary sanctions in Defendants' favor. In particular, the Court found that:

> As discussed above, Plaintiff has failed to adequately respond to:
> - Requests for Production Nos. 47 and 48, which request documents showing the ability of Plaintiff's business to provide equivalent officiating services as SJVOA and which demonstrate the maximum number of games Plaintiff has officiated in any given season; and,
> - Special Interrogatories Nos. 21, 26, 27, and 41, which ask for:
>   o The name and address of any individual who was denied an appointment

---

[2] The conference was later continued to July 18, 2106.

[3] Defendants state that they served these discovery requests on April 7, 2016. (ECF No. 39.) Defendants also complained that Plaintiff was ignoring their phone calls to meet and confer about discovery issues.

3

to the SJVOA Board of Directors because of race;

- A list of all instances of discrimination perpetrated by individual Defendants against Plaintiff;
- A description of each act of discriminatory conduct which Defendant SJVOA perpetrated against Plaintiff; and,
- Any facts supporting the allegation in Plaintiff's Complaint that he was subjected to specific instances of racial discrimination by Defendants.

The Court finds it appropriate, based on these failures, to preclude Plaintiff from introducing further facts or evidence in response to these issues. In particular, Plaintiff cannot offer or introduce into evidence facts, either during summary judgment or at trial, which were not disclosed in response to the above discovery as of August 26, 2016. Such sanctions are reasonably related to the subject of discovery that was frustrated by Plaintiff's sanctionable conduct. *Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 393-394 (N.D. Cal. 2012) (issue sanction justified for failure to produce documents and deponents); *Tacori Enters. v. Beverlly Jewellery Co. Ltd.*, 253 F.R.D. 577, 584 (C.D. Cal. 2008), *citing Nike, Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 647-49 (Fed. Cir. 1994) (applying Ninth Circuit law and affirming court order precluding plaintiff from presenting evidence regarding one theory of liability when plaintiff did not provide discovery on the issue). For example, Plaintiff may not later assert that he knows of an individual who was denied an appointment to the SJVOA Board of Directors because of race, nor may he attempt to seek testimony or other evidence from any such individual, unless that individual was specifically identified in response Special Interrogatory No. 21. Moreover, Plaintiff is prohibited from further attempting to supplement his discovery responses; his case must succeed or fail on the information he has disclosed as of August 26, 2016.

(ECF No. 55.)

On September 22, 2016, Defendants filed a Motion for Summary Judgment on all claims. (ECF Nos. 59, 60, 61.) Plaintiff filed an opposition brief. (ECF Nos. 63, 64, 65.) Defendants filed a reply. (ECF No. 66.) Plaintiff then filed a second opposition brief responding to Defendants' reply. (ECF No. 67.) Plaintiff was not given leave to file a surreply brief, nor do the Local Rules permit such briefing as a matter of course. Plaintiff's second opposition brief (ECF No. 67) is thus stricken. After reviewing the papers submitted in support and opposition of the Motion, the Court determined that this matter is suitable for decision without oral argument pursuant to Local Rule 230(g).[4] Based on the pleadings and for the reasons set forth below, Defendants' Motion is GRANTED.

## III. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the

---

[4] All parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c)(1). (ECF Nos. 21, 22.)

nonmoving party" and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Once the moving party meets its initial burden, the non-moving party must 'go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1125 (E.D. Cal. 2006), *quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremkin v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*, *citing Celotex*, 477 U.S. at 323. "A party opposing summary judgment must direct our attention to specific, triable facts." *S. Cal Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). "[B]ald assertions or a mere scintilla of evidence" are inadequate to survive summary judgment. *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). The court "is not required to comb the record to find some reason to deny a motion for summary judgment." *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988). "On a summary judgment motion, 'the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Id.*, *quoting Liberty Lobby, Inc.*, 477 U.S. at 1413.

**IV.   DISCUSSION**

**A. Plaintiff is Not Entitled to Additional Time to Conduct Discovery under Rule 56(d)**

As an initial matter, Plaintiff complains that the Court should not grant summary judgment in favor of Defendants because Defendants have engaged in "dilatory tactics" that have "prevented the plaintiff from obtaining full discovery and developing the record in support of his claims." (Plaintiff's Opposition 5:24-26, ECF No. 63.) The Court construes this as a request to delay consideration of the motion under Rule 56(d) of the Federal Rules of Civil Procedure.

Rule 56(d) provides that:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

Under Rule 56(d), the "requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). "Failure to comply with these requirements 'is a proper ground for denying discovery and proceeding to summary judgment.'" *Id.*, quoting *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986). "The purpose of Rule 56(d) is to prevent the nonmoving party from being 'railroaded' by a premature summary judgment motion." *Greer v. Lockheed Martin Corp.*, 855 F.Supp.2d 979, 985 (N.D. Cal. 2012). Thus, to prevail in a request under Rule 56(d), the requesting party must have "diligently pursued previous discovery opportunities." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1026 (9th Cir. 2006).

Plaintiff has not demonstrated any of the conditions required to receive additional time to conduct discovery. Even if he had followed the procedural requirements and submitted an affidavit requesting such an extension, he does not describe the specific facts he hopes to uncover with further discovery, nor does he show that those facts actually exist. Rather, Plaintiff has provided only a vague reference to "crucial documentation exhibiting the extent of the system of discrimination" buried within the conclusion of one of his numerous briefs opposing summary judgment.

Moreover, Plaintiff's conduct thus far in this litigation has not demonstrated diligence in the pursuit of discovery. Plaintiff had every opportunity to seek discovery in this litigation. He was aware of the documents he required to prove his case as early as December 2015. (ECF No. 56.) The Court provided the parties with multiple hearings to discuss the progress of discovery, made every effort to encourage participation in the discovery process, and made various orders compelling disclosure of discovery. (ECF Nos. 25, 29, 31, 36, 43, 56.) The parties were also provided an extension to the discovery cutoff date after they failed to conclude their discovery in the required time. (ECF No. 43.)

Plaintiff was even provided leave to file an untimely motion to compel. (ECF No. 51.) Plaintiff has had more than adequate opportunities to pursue discovery to oppose a summary judgment motion and has not availed himself of those opportunities. The Rule 56(d) request is thus denied.

### B. No Triable Issues of Fact Exist for Plaintiff's 42 U.S.C. § 1981 Claim

"42 U.S.C. § 1981 secures to all persons 'the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.'" *Stones v. Los Angeles Cmty. Coll. Dist.*, 796 F.2d 270, 272 (9th Cir. 1986), *quoting* 42 U.S.C. § 1981. "[T]o recover, a plaintiff must prove that the defendant acted against him with discriminatory intent." *Id.* On summary judgment, courts may "apply the burden-shifting framework established in *McDonnell Douglas*," which requires the plaintiff to first "establish a prima facie case of discrimination or retaliation." *Metoyer v. Chassman*, 504 F.3d 919, 930-931 (9th Cir. 2007), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If the plaintiff makes this showing, the burden "shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct." *Id.*, *quoting Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). If the defendant "articulates a legitimate reason for its action, 'the presumption of discrimination drops out of the picture, and the plaintiff may defeat summary judgment by satisfying the usual standard of proof required . . . under Fed. R. Civ. P. 56(c).'" *Id.* at 931 n. 6, *quoting Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).

The elements required for a prima facie case of discrimination under § 1981 are: "(i) the plaintiff must be a member of a protected class; (ii) he attempted to contract for certain services; (iii) he was denied the right to contract for those services; and (iv) a similarly-situated group of a different protected class was offered the contractual services which were denied to the plaintiff." *Ennix v. Stanten*, 556 F.Supp.2d 1073, 1085 (N.D. Cal. 2008), *citing Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1144 (9th Cir. 2005). Alternatively, a plaintiff "may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [defendant]." *Metoyer*, 504 F.3d at 931.

It is undisputed that Plaintiff is a member of a protected class under § 1981, that he attempted to enter into a contract with Defendant SJVOA, and that his contract proposal was rejected by Defendants. Plaintiff does not, however, put forth any evidence that demonstrates that a similarly situated member of

a different class received the contract for which he applied. Indeed, it is not clear from the evidence presented that *anyone* entered into a similar contract with Defendant SJVOA in the same time frame.[5] Nor do SJVOA's board minutes reflect the award of any such contract to another individual. (Plaintiff's Additional Responses to Defendant SJVOA's First Set of Requests for Production of Documents, ECF No. 53-3 at pg. 40-42.)

Plaintiff puts forth evidence of another, purportedly similar proposal that was allegedly rejected on a racially discriminatory basis by Defendants in November 2013. That proposal was tendered to SJVOA by Ruby Earl, the owner of Fresno Valley Sports and proposed that Fresno Valley Sports act as a subcontractor for sports officiating services. (Plaintiff's Supplemental Discovery Responses, ECF No. 53-3 at pg. 25.) The fact that this proposal exists does not establish that Defendants had any racial animus in rejecting Plaintiff's proposal, however.

First, both proposals were apparently rejected. Thus, even assuming Earl belongs to a different protected class than Plaintiff (*i.e.*, was a different race than Plaintiff), no inference of racially discriminatory conduct can be drawn. And if Earl belongs to the same protected class as Plaintiff, then this evidence does not help him show that "a similarly-situated group of a different protected class was offered the contractual services which were denied to" him. Second, much of the information surrounding Earl's proposal is presented in Plaintiff's Response to Defendants' Statement of Undisputed Facts, which was served on Defendants for the first time on October 19, 2016. (ECF No. 64 at pg. 2.) This information was thus produced long after the discovery cutoff date in this case and in contravention of the Court's order granting Defendants' request for sanctions (ECF No. 55), which precluded Plaintiff from further supplementing his discovery responses after August 26, 2016. As Defendants point out in their reply brief, any such information is thus not admissible and cannot establish a triable issue of material fact.

Nor is there other direct or circumstantial evidence of Defendants' discriminatory intent. There is no direct evidence that Defendants had racially discriminatory motives in rejecting Plaintiff's proposal;

---

[5] Even the nature of the contract is largely opaque to the Court. Although Plaintiff produced what appears to be the business proposal he made to Defendant SJVOA in response to a document request, the precise terms and scope of the contract are not clear. (Plaintiff's Responses to Defendant SJVOA's First Set of Requests for Production of Documents, ECF No. 53-2 at pg. 14.) Nor is it clear if the proposal was solicited by Defendants.

the August 13, 2013 rejection email states only:

> On Monday August 12, 2013, the San Joaquin Valley Officials Association Board of Directors met, within that meeting a partnership with Sports Time Officals was discussed. Each of the Sports Directors, at this time, will all continue to service all aspects of their sports.
>
> Thank you for reaching out to our association regarding this partnership, however at this time San Joaquin Valley Officials Association will not enter into a joint business venture with Sports Time Officials Association.

(Plaintiff's Responses to Defendant SJVOA's First Set of Requests for Production of Documents, ECF No. 53-2 at pg. 15.) Similarly, Plaintiff does not point to any statements made by Defendants or other direct evidence of discrimination.

Plaintiff does contend, however, that there is circumstantial evidence demonstrating Defendants' discriminatory animus because Defendant SJVOA has a historical practice of discriminating against African-Americans. In particular, Plaintiff argues that that SJVOA does not hire or promote African-Americans, nor does it contract with African-Americans or have any African-Americans on its board of directors. (Plaintiff's Opposition to Motion for Summary Judgment 13:1-6, ECF No. 63-1.)

As an initial matter, however, Plaintiff does not submit any evidence to support this contention, aside from the statements he makes in his opposition brief.[6] The statistics that Plaintiff does cite, moreover, are not entirely consistent. At one point in his briefing, Plaintiff states that Defendants have "at least a minimum 130 or more African-American officials out of a total membership of 300 plus officials." *Id.* at 3:22-24. Later on, however, Plaintiff argues that Defendants are "not hiring or promoting African American administrative personnel or not contracting with African American sports officiating subcontractors." *Id.* at 13:1-3. Elsewhere, in his discovery responses, Plaintiff admits that Defendant SJVOA has entered into contracts with several African-American individuals, in addition to Plaintiff, who contracted with SJVOA at several points in the past.[7] (Plaintiff's Responses to Defendant

---

[6] The opposition brief is not signed under penalty of perjury and thus is not admissible as evidence on summary judgment. *Johnson v. Sandy*, Case No. 2:12-cv-02922-JAM-AC-P, 2015 WL 1894400, at *1 (E.D. Cal. April 24, 2015) ("Unsworn declarations not signed under penalty of perjury do not constitute admissible evidence properly considered in ruling on a motion for summary judgment."), *citing* 28 U.S.C. § 1746; *see also Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (court may consider *verified* pleadings as evidence for *pro se* parties); *Chao v. Westside Drywall, Inc.*, 709 F.Supp.2d 1037, 1052 (D. Or. 2010) ("The first three declarations contained within Exhibit 18 are not given under penalty of perjury. These declarations are not made in accordance with 28 U.S.C. § 1746, therefore they do not satisfy the requirements of FRCP 56(e) and are not admissible as evidence.")

[7] The Court notes that the fact that SJVOA contracted with Plaintiff in the past may raise an inference that it did not harbor any racial bias against Plaintiff. *Coghlan*, 413 F.3d at 1096 ("an employer's initial willingness to hire the employee-plaintiff

SJVOA's Requests for Admissions Nos. 10 and 11, ECF No. 53-2 at pg. 19.)[8] These internal contradictions make Plaintiff's statements largely unreliable and inadequate to defeat summary judgment. *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005) ("when a plaintiff relies on circumstantial evidence, that evidence must be 'specific and substantial' to defeat the employer's motion for summary judgment.").

Even if Plaintiff's statements were accepted, however, they would not be adequate to establish that a discriminatory reason motivated Defendants' decision to refuse Plaintiff's proposal. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 663 (9th Cir. 2002) ("while 'statistics have a place in disparate treatment cases, their utility 'depends on all of the surrounding facts and circumstances.''"). Plaintiff's statistics are offered completely absent any context—although he states that there has been only one African-American member on SJVOA's board of directors in SJVOA history, he does not explain how individuals are placed on the board of directors. Nor does he link this fact to the decision to refuse his proposal. The mere fact that a non-African-American individual made a decision adverse to an African-American individual does not make that decision discriminatory. This statistical evidence, without more, is not enough to demonstrate that Defendants engaged in racial discrimination. *Id.* at 663-64 ("Aragon's statistics, which 'stand precariously unsupported by other probative evidence of [race] discrimination,' fall short of constituting substantial and specific evidence of racial discrimination.").

Finally, Plaintiff attempts to offer comparative evidence to establish Defendants' discriminatory intent. In particular, Plaintiff contends that he had "vast experience" and was well qualified "to do the requested work," but such an assertion matters little, given the evidence presented. (Plaintiff's Opposition 13:15-17, ECF No. 63-1.) Plaintiff does not provide any evidence to suggest that, after the rejection of his proposal, Defendants sought similar proposals from people with comparable (or lesser)

---

is strong evidence that the employer is not biased against the protected class to which the employee belongs."). Because the last contract with Plaintiff was relatively remote in time (it apparently ended in 2006) and the circumstances surrounding that contract are not entirely clear, however, the inference in Defendants' favor is a very weak one.

[8] In his response to Defendants' Statement of Undisputed Facts, Plaintiff states that he was only admitting that there are African-American individuals who are *independent contractors* working with SJVOA and was not admitting that those individuals are *contractors* with SJVOA. (Plaintiff's Response to Defendants' Statement of Undisputed Facts, ECF No. 64 at pg. 2.) Plaintiff does not explain why he believes that "independent contractors" are distinguishable from "contractors." Even if the nature of the contracts are distinguishable, however, this admission undercuts Plaintiff's statement that SJVOA is wholly uninterested in entering into contracts for services with African-American individuals.

qualifications. *See McDonnell Douglas Corp.*, 411 U.S. at 802. If there are no similarly situated comparators, comparative evidence is not useful in evaluating Plaintiff's discrimination claim. *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) (comparative evidence requires the "individuals seeking relief" to demonstrate that there are comparable individuals who are "similarly situated . . . in all material respects"). Put another way, if Defendants did not seek out any other proposals, Plaintiff's relative qualifications are irrelevant—Defendants simply did not want to enter into business proposals of the sort offered by Plaintiff.

Plaintiff has provided little or no evidence in support of his claim that Defendants engaged in racial discrimination when they rejected his proposal. Thus, no triable issue of material fact exists as to Plaintiff's § 1981 claim.

**C.  No Triable Issues of Fact Exist for Plaintiff's 42 U.S.C. § 2000d Claim**

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "To state a claim for damages under 42 U.S.C. § 2000d *et seq.*, a plaintiff must allege that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance." *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994) (citations omitted), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001). The plaintiff must also "prove (1) that he is the 'intended beneficiary of the federally-funded program the defendants . . . participated in,' and (2) that the defendant intentionally discriminated against him in violation of the statute." *Epileptic Found. v. City & Cty. of Maui*, 300 F.Supp.2d 1003, 1011 (D. Haw. 2003), *citing Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (internal citations omitted). Title VI claims are analyzed under the same burden shifting framework used in Title VII employment discrimination cases. *See Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 519 (9th Cir. 2011) ("We look to Title VII disparate impact analysis in analyzing Title VI claims.").

Defendants contend that they do not receive any federal financial assistance and thus are not bound by § 2000d. In support of this contention, they submit a declaration by Randy Wright, the current

President of the Board of Directors of SJVOA. (Declaration of Randy Wright ("Wright Decl.") ¶ 5, ECF No. 60.) Plaintiff asserts that Defendant SJVOA receives (or has received) over $800,000 in revenue from "its local public school district contracts," but offers no evidence to support this figure. (Plaintiff's Opposition 3:15-17, ECF No. 63-1.) There is no evidence that these "local public school district contracts" are received as a result of federal financial assistance, nor is there any evidence that Plaintiff is the intended beneficiary of any federally-funded program. It seems unlikely that any federal funds awarded to local school districts would be intended to benefit subcontracted sports officiating, rather than the students of those school districts, but the Court will not speculate as to the purpose of funds that appear not to exist. In any case, Plaintiff has not offered evidence sufficient to rebut Defendants' evidence that they receive no federal financial assistance.[9]

Even if Plaintiff were to demonstrate that Defendant SJVOA received federal financial assistance, he would still need to show that it engaged in racial discrimination when it rejected his proposal. As explained above, he has not done so. It is not enough to show that Plaintiff is of a different race than SJVOA board members; more is needed to show discriminatory intent. *Epileptic Found. v. City & Cty. of Maui*, 300 F. Supp. 2d 1003, 1013 (D. Haw. 2003), *citing Bingham v. City of Manhattan Beach*, 329 F.3d 723, 731 (9th Cir. 2003) ("The observation that Plaintiffs (save EFM) and Buck are of different races is not enough . . . Plaintiffs' burden to 'produce evidence of [impermissible] discriminatory intent' requires something more."). Even assuming the truth of each of Plaintiff's contentions, there is no evidence of intentional racial discrimination in the rejection of Plaintiff's business proposal.

Plaintiff cites to a variety of legal authorities for the apparent proposition that Defendant SJVOA should not discriminate against African-Americans. (Plaintiff's Response to Defendants' Statement of Undisputed Facts, ECF No. 64 at pg. 3, *citing Bd. of Educ. of Oklahoma City Pub. Sch., Indep. Sch. Dist. No. 89, Oklahoma Cty., Okl. v. Dowell*, 498 U.S. 237, 250 (1991); Cal. Educ. Code §§ 83, 220.) But none of these authorities help Plaintiff—it is undisputed that Defendants may not engage in racial

---

[9] The Court also observes that the statute appears to apply only to any "program or activity" receiving federal financial assistance. "Program or activity," as the term is defined in the statute, does not refer to individuals. 42 U.S.C. § 2000d-4a. Thus, a claim against the individual board member Defendants fails as a matter of law.

discrimination. Plaintiff is simply unable to show that Defendants engaged in racial discrimination by rejecting his business proposal.

Nor do any of these legal authorities help Plaintiff establish any of the elements of his claim. *Dowell*, for instance, addresses a school district's progress in desegregating its programs, but has nothing to say with respect to § 1981 or § 2000d, Plaintiff's only claims. Plaintiff's citations to the California Education Code are likewise not relevant is discussing his federal claims. Plaintiff's numerous references to Executive Order 11246, which requires federal contractors to adopt certain affirmative action requirements, are similarly inapplicable. *Utley v. Varian Assocs., Inc.*, 811 F.2d 1279, 1286 (9th Cir. 1987) ("the executive did not intend a private judicial remedy to redress violations of Executive Order 11,246's affirmative action program. We therefore decline to interpret the executive order as providing a private right of action.").

Plaintiff has failed to raise a triable issue of material fact with respect to his § 2000d claim because he has not raised evidence sufficient to show any of the required elements. Summary judgment is thus appropriate.

## V.  ORDER

Defendants are entitled to summary judgment as a matter of law because there is no genuine issue of material fact as to either of Plaintiff's causes of action. Defendants' Motion for Summary Judgment (ECF Nos. 59, 60, 61) is GRANTED in full. The Clerk of the Court is DIRECTED to close this case.

IT IS SO ORDERED.

Dated:  **December 8, 2016**              /s/ Erica P. Grosjean
                                          UNITED STATES MAGISTRATE JUDGE

13